Links: 944, 946

FILED
CLERK, U.S. DISTRICT COURT

JUN 27 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. DUDASH, et al. ) | **Case No. CV 04-10067 GAF (RZx)** |
| ) | |
| Plaintiffs, ) | **MEMORANDUM AND ORDER** |
| ) | **REGARDING PLAINTIFF'S MOTION** |
| v. ) | **FOR FINAL SETTLEMENT APPROVAL** |
| ) | **AND AWARD OF ATTORNEY'S FEES** |
| VARNELL STRUCK & ASSOCS., Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

## I.

## INTRODUCTION

Varnell Struck & Associates ("VSA"), prior to going out of business, provided Lowe's Home Improvement Stores with workers who re-stocked, ordered and displayed merchandise. For a number of years, VSA classified its workers as exempt from various federal and California wage and hour law requirements. The VSA Workers subsequently brought this class action against VSA, which was certified by the Court under both Rule 23 of the Federal Rules of Civil Procedure and the Fair Labor Standards Act ("FLSA"), in March of 2006. (Docket No. 574.) In the Fall of 2006, Plaintiffs added Lowe's as a defendant and then settled with VSA for $375,000. The VSA settlement did not provide any payment to class members, but instead

1

1  funded $25,000 in administrative costs, $133,760 in attorney's fees and costs and

2  $216,240 to cover future class counsel costs.  (10/20/2006 Order Granting Final

3  Approval (Docket No. 845); 10/30/2006 Qualls Decl., Ex. A [6/27/2006 Settlement].)

4  The claims against VSA were dismissed with prejudice on March 21, 2007.

5       Plaintiffs and Lowe's have settled their case as well, for the total sum of

6  $2,950,000, and, after obtaining preliminary approval and providing notice to the class

7  members, now request final approval of that settlement.  In addition, Class Counsel

8  seeks an award of attorney's fees in the amount of $973,500.

9       For the reasons discussed below, and having received further information

10  regarding the settlement during the hearing on the motion for approval, the Court

11  **GRANTS** the motion for final approval but with modification.

12  <div align="center">**II.**</div>

13  <div align="center">**APPROVAL OF THE SETTLEMENT**</div>

14  **A. LEGAL STANDARD**

15       "A settlement should be approved if 'it is fundamentally fair, adequate and

16  reasonable.'"  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)

17  (citation omitted).  There is a two-step process to approving a proposed settlement,

18  namely that "the Court first determines whether a proposed class action settlement

19  deserves preliminary approval and then, after notice is given to class members,

20  whether final approval is warranted."  Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,

21  221 F.R.D. 523, 525 (C.D. Cal. 2004) (citation omitted).

22       In the Ninth Circuit, courts balance several factors when determining whether

23  to approve a class action settlement, which may include some or all of the following:

24       (1) the strength of the plaintiffs' case;

25       (2) the risk, expense, complexity, and likely duration of further litigation;

26       (3) the risk of maintaining class action status throughout the trial;

27       (4) the amount offered in settlement;

28       (5) the extent of discovery completed and the stage of the proceedings;

<div align="center">2</div>

1    (6) the experience and views of counsel;

2    (7) the presence of a governmental participant; and

3    (8) the reaction of the class members to the proposed settlement.

4    Torrisi, 8 F.3d at 1375-76 (citation omitted).  These factors are not exclusive and one

5    factor may be given more weight than others in a particular situation.  Officers for

6    Justice v. Civil Serv. Comm'n of the City and County of San Francisco, 688 F.2d 615,

7    625 (9th Cir. 1982).

8    Bringing a claim under the FLSA, as Plaintiffs do here, does not change the

9    inquiry into the adequacy of the settlement since the two inquiries are largely the

10   same: the court must "scrutiniz[e] the settlement for fairness."  Lynn's Food Stores,

11   Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982) (citing Schulte, Inc. v.

12   Gangi, 66 S. Ct. 925, 928 n.8 (1946); Jarrard v. Se. Shipbuilding Corp., 163 F.2d 960,

13   961 (5th Cir. 1947)).

14   **B. TERMS OF THE SETTLEMENT**

15   The operative complaint brought claims, all stemming from an alleged failure

16   to pay wages owed, for violation of: (1) the FLSA; (2) California Wage Order and

17   Labor Code § 1194; (3) California Labor Code §§ 226.7 and 512 as well as applicable

18   Industrial Welfare Commission Orders; (4) California Business and Professions Code

19   §§ 17200 et seq.; and (5) Labor Code Private Attorney's General Act of 2204, Labor

20   Code § 1698. (Settlement[1] § II.A.; Second Amended Complaint at 11-14 (Docket No.

21   843).)

22   The class period is from July 8, 2000 to October 1, 2005.  (Settlement § I.P.)

23   The Rule 23 class is defined as:

24       Former employees of Varnell Struck in the State of California employed as
25       Service Specialists, beginning in July 8, 2000, as identified in Attachment A
         hereto.

26   (Settlement § I.O.)  The FLSA class is defined as:

27   _____

28   [1]The Stipulation of Settlement, signed by the parties, is attached to the April 21, 2008 Qualls
     Declaration (Docket No. 940-4) and is cited throughout this order as "Settlement."

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Former employees of Varnell Struck in the United States comprised of Service Specialists, beginning in July 8, 2000, as identified on Attachment B hereto.

(Settlement § I.O.) The FSLA class and Rule 23 class are referred to in the Settlement as the "Settlement Class." (Settlement § I.O.)

The Settlement establishes a Common Fund of $2,950,000. (Settlement § I.N.) Class counsel's fee and costs award, administrative costs incurred by the settlement administrator, and named plaintiff Dudash's enhancement award are deducted from the Common Fund. (Settlement §§ I.A., I.I., X.B.) Settlement Class members will receive a pro rata lump sum payment from the amount remaining in the Common Fund, after costs and attorney's fees are deducted, determined by the number of weeks worked by the member during the class period. (Settlement § X.A.) If the Common Fund is not depleted, any amount left over will revert to Lowe's. (Settlement § I.N.)

The Settlement "effectuate[s] the full, final and complete resolution of all allegations and claims arising out of the dispute which is the subject of the Litigation." (Settlement § II.H.) The release covers "any and all wage-related claims" and "all known and unknown claims for unpaid wages" for "all members of the Settlement Class who do not timely opt out." (Settlement § VI.A.) The release includes "all claims for overtime compensation, meal and rest period penalties and/or premiums, wages and other compensation, interest and waiting time penalties" under California law "and any other applicable provisions of state or federal law." (Settlement § VI.A.) However, "a class member who did not opt in as an FLSA class member does not waive or release any FLSA claim." (Settlement § VI.A.)

## C. ADEQUACY OF THE SETTLEMENT

The parties state that they engaged in "good faith, arms-length negotiations" concerning the settlement and were able to reach an agreement after participating in a mediation on January 21 and 22, 2008. (Settlement § II.E.) Plaintiffs' counsel asserts that it concluded the settlement was fair after investigating the law and facts,

4

1  considering the contested issues and weighing the time and expense to pursue the

2  case through trial. (Settlement § II.F.) Likewise, Lowe's concluded the settlement

3  was appropriate after considering the costs, burden and disruption of continued

4  litigation as well as the uncertainty as to an outcome at trial. (Settlement § II.G.) All

5  of this weighs in favor of approval.

6       Furthermore, the parties have conducted over 53 depositions and class

7  counsel has interviewed over 200 class members in the course of the litigation.

8  (Mem. at 10.) Class counsel has also reviewed countless employment records and

9  related documents. (Mem. at 10.) Furthermore, discovery closed in December of

10  2007. (3/12/07 Case Management Order (Docket No. 879).) At this stage, this case

11  is very well-developed -- there was even a motion for summary judgment pending with

12  the Court when the parties reached their settlement. All this, as well, weighs in favor

13  of preliminary approval.

14       In addition, the Settlement amount seems adequate, given that there were

15  outstanding substantive issues such as whether Lowe's could be held liable as joint

16  employer and whether Plaintiffs' statistical analyses, which supports its proof of

17  damages, could withstand scrutiny. (Mot. for Preliminary Approval (Docket No. 924)

18  at 16-23.) Again, approval seems appropriate.

19       The settlement administrator mailed the Notices on May 19, 2008. (Revised

20  Claim Administrator Decl. ¶ 6 (Docket No. 947).) After dealing with Notices returned

21  undeliverable and searching for additional addresses for Class Members, the

22  settlement administrator was unable to deliver notices to 21 of the 616 class

23  members. (Revised Claim Administrator Decl. ¶ 11.) Of the 595 members mailed

24  Notices, the settlement administrator has received one request for exclusion and no

25  objections but did receive 317 claim forms. (Revised Claim Administrator Decl. ¶¶ 12-

26  14.) Accordingly, only 53% of the Class Members who received notice filed a claim

27  form and will obtain some form of recovery.

28

1       Although the moving papers did not provide the Court with an estimate of the

2   anticipated payout, that matter was addressed at the hearing.  First, regarding the

3   costs of administration, the parties advised that the total cost is unlikely to exceed

4   $30,000 given the amount paid out to date.   Based on that figure, and the anticipated

5   range of the attorney fee award in this case, the funds available for settlement will

6   range somewhere between $1,800,000 and $2,000,000.   At this point, given the

7   number of response to the notice, it is likely that approximately 50% of the net amount

8   in the settlement fund will be distributed.[2]

9   **D. INCENTIVE AWARD**

10       Plaintiff Dudash also seeks $15,000 as an incentive award for bringing this

11   class action.  (Mem. at 16.)  The Ninth Circuit has held that named plaintiffs in a class

12   action "are eligible for reasonable incentive payments."  Staton v. Boeing Co., 327

13   F.3d 938, 977 (9th Cir. 2003).  In determining how much to award, district courts

14   should consider "relevant factors including the actions the plaintiff has taken to protect

15   the interests of the class, the degree to which the class has benefitted from those

16   actions, [and] the amount of time and effort the plaintiff expended in pursuing the

17   litigation."  Id. (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

18       The Court finds that the requested award is appropriate.  Dudash "spent

19   significant time and effort assisting Plaintiff's counsel in their initial pre-filing

20   investigation and subsequent class loss damage assessments."  (Mem. at 16.)

21   Furthermore, Dudash was deposed on three different occasions.  (Id.)  Accordingly,

22   Dudash has demonstrated that he is entitled to an enhancement award of $15,000.

23   See, e.g., Rausch v. Hartford Fin. Servs. Group, No. 01-CV-1529-BR, 2007 WL

24

25   [2] At the hearing the parties explained the discrepancy between the number of Class Members

26   identified in the settlement and the number provided to the claims administrator.  (Compare, Settlement Ex. A (listing **95** Rule 23 Class Members) with Revised Claims Administrator Decl.

27   ¶ 2 (noting only **94** Rule 23 Class Members); compare also Settlement Ex. B (listing **563** FLSA Class Members) with Revised Claims Administrator Decl. ¶ 2 (noting only **562** FLSA Class

28   Members).)  As the Court had anticipated, the discrepancy is based on the removal of named plaintiff Dudash from both lists.

1 | 671334, at *3 (D. Or. Feb. 26, 2007) (slip copy) (awarding $10,000 to class plaintiff as
2 | a "reasonable incentive award").

3 | <center>III.</center>

4 | <center>**ATTORNEY'S FEES AND COSTS**</center>

5 | **A. LEGAL STANDARD**

6 |   Federal Rule of Civil Procedure ("Rule") 23(h) provides that "[i]n an action
7 | certified as a class action, the court may award reasonable attorney fees and
8 | nontaxable costs authorized by law or by agreement of the parties." Courts have
9 | broad discretion in assessing the reasonableness of attorney's fees in class actions.
10 | Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000). In calculating a reasonable
11 | fee award in common fund cases, where the settlement creates a large fund for
12 | distribution to the class, the court has discretion to use either a percentage or lodestar
13 | method. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). "[T]he
14 | choice between lodestar and percentage calculation depends on the
15 | circumstances . . . . The benchmark percentage should be adjusted, or replaced by a
16 | lodestar calculation, when special circumstances indicate that the percentage
17 | recovery would be either too small or too large in light of the hours devoted to the
18 | case or other relevant factors." Six (6) Mexican Workers v. Ariz. Citrus Growers, 904
19 | F.2d 1301, 1311 (9th Cir. 1990).

20 |   The Ninth Circuit has established twenty-five percent as the "benchmark"
21 | award in common fund cases. Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d
22 | 268, 272 (9th Cir. 1989). This percentage can be adjusted upwards or downwards,
23 | typically between twenty and thirty percent "to account for any unusual circumstances
24 | involved in [the] case." Paul, Johnson, 886 F.2d at 272. Even if other factors point to
25 | an increase in attorney's fees, this can be offset if it would cause depletion to an
26 | already small recovery by the class members. See In re Xoma Corp. Sec. Litig., 1992
27 | U.S. Dist. LEXIS 10502, at *14.

28 |

<center>7</center>

1   Although the percentage method is the primary basis of an award of attorney's

2   fees, "[c]alculation of the lodestar, which measures the lawyers' investment of time in

3   the litigation, provides a check on the reasonableness of the percentage award."

4   Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002).  The lodestar is

5   calculated by "multiplying the number of hours the prevailing party reasonably

6   expended on the litigation by a reasonably hourly rate."  Claude v. Bristow Optical

7   Co., 224 F.3d 1014, 1028 (9th Cir. 2000) (citing Morales v. City of Rafael, 96 F.3d

8   359, 363 (9th Cir. 1996)); see also Hensley v. Eckerhart, 461 U.S. 424, 433-34

9   (1983).  After computing the lodestar, the district court is to assess whether additional

10  considerations require that the court adjust the figure.  Kerr v. Screen Extras Guild,

11  Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951 (1976).  Normally, a

12  court, in determining the appropriateness of fees, considers some of the factors

13  specified in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975),

14  including time and labor required.  But see Yahoo!, Inc. v. Net Games, Inc., 329 F.

15  Supp. 2d 1179, 1182 (N.D. Cal. 2004) (noting certain Kerr factors are now subsumed

16  in lodestar analyses).

17  **B. PERCENTAGE METHOD ANALYSES**

18  Class counsel requests 33% of the total recovery as its fee.  (Mem. at 5.)

19  Accordingly, class counsel would receive $973,500.  (Mem. at 5.)  Class counsel

20  argues that the total recovery of $2,950,000 constitutes "more than one-half of total

21  unpaid overtime wages claimed" which is a "highly favorable result given the

22  significant risk factors impacting class claims."  (Mem. at 7.)  However, class counsel

23  provides no legal support as to what percentage recovery of alleged injuries actually

24  constitutes a "highly favorable result," i.e., it is not clear whether most or all wage and

25  hour actions achieve more or less recovery than achieved here.

26  Class counsel also argues that it "bore the risk" of the litigation and took on

27  2515.35 hours of professional time over four years with no guarantee of recovery.

28  (Mem. at 7.)  However, the Court does not see how this differs from any other wage

1    and hour action where the attorney's recovery is premised on successful litigation.

2    That is, the risk subsumed by class counsel here does not seem different than that

3    subsumed in any other contingent wage and hour action, such that an increase above

4    the normal 25% benchmark for recovery would be justified.

5           Class counsel makes a similar argument that its performance merits the

6    increased 33% recovery. (Mem. at 8.) However, merely conducting successful

7    litigation, without more, does not warrant an increase. Indeed, every request for

8    attorney's fees from the prevailing party, by definition, involves successful litigation.

9           Accordingly, the Court is reluctant to award attorney's fees based on a

10   percentage of the recovery beyond the benchmark 25%. However, the Court tests

11   that proposition against the results achieved through the lodestar analysis.

12   **C. LODESTAR METHOD ANALYSES**

13          Under the lodestar analyses, class counsel argues that it worked 2,515.35

14   hours and that the attorney's billing rate was $450 per hour. (Mem. at 11.) Class

15   counsel then argues that the lodestar fee is $832,426 (after accounting for the

16   previous fee award from the VSA settlement) but asks for a multiplier of 0.169 to

17   reach a figure of $973,105 -- approximately the same amount ($973,500) if the Court

18   were to award 33% of the total settlement. (Mem. at 11.) A 30% award would yield a

19   fee of $885,000.

20          The billing data submitted by Plaintiff's counsel reflects a total of 2,515.35

21   hours spent on the case, most of which were incurred by Mr. Qualls. The specific

22   time charges of each person billing to the case are set forth in an 84 page document

23   (Exhibit A) attached to Mr. Qualls's declaration. This document reflects a relatively

24   minor amount of time billed by an associate attorney in his office (at $300/hour) and

25   time worked by his paralegal at a rate of $125/hour. The blended rate for those billing

26   to the file was $370.89. This figure, multiplied by the total number of hours worked,

27   less the prior attorney's fee award yields the lodestar figure set forth above.

28

1 **D. CONCLUSION – A 30% AWARD IS APPROPRIATE**

2      Taking the foregoing into account, the Court concludes that a percentage

3 award of 30% is appropriate. It slightly exceeds the lodestar figure, but by a relatively

4 small amount. It is also within the range of awards that the circuit has identified as

5 reasonable in cases like this one. Accordingly, the Court will approve the award of an

6 attorney's fee of $885,000.

7 **E. ADMINISTRATIVE COSTS**

8      Class counsel also seeks payment of $28,349.60 to the claims administrator.

9 (Mem. at 16; see Revised Claim Administrator Decl.) Considering that these costs

10 were estimated at $35,000 when the Court granted preliminary approval, the request

11 for $28,349.60 is appropriate.

12           **IV.**

13         **CONCLUSION**

14      For the foregoing reasons the motion for final approval of the class settlement

15 is **GRANTED** with the modification that the Court has determined that a 30% attorney

16 fee award ($885,000) and not 33% is appropriate in this case.

17

18      IT IS SO ORDERED.

19

20 DATED: June 27, 2008

21

22 Judge Gary Allen Feess
United States District Court

23

10